# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CHRISTIAN MOISES MONTERO CORDOVA,

      Petitioner,

    v.                                Case No. 1:26-cv-00526-KWR-DLM

KRISTI NOEM, *in her official capacity as*
*Secretary of the U.S. Department of Homeland Security*,
PAMELA BONDI, *in her official capacity as Attorney General of the United States*,
TODD M. LYONS, *in his official capacity as*
*Acting Directory of U.S. Immigration and Customs Enforcement*,
WILLIAM SHAW, *in his official capacity as Director of the Albuquerque*, *NM ERO sub-office*,
*U.S. Immigration and Customs Enforcement*, and
RAY CARNES, *in his official capacity as Warden of the Torrance County Detention Facility*,

      Respondents.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Petitioner Christian Moises Montero Cordova's Petition for Writ of Habeas Corpus (Doc. 1). Petitioner asserts a single claim alleging that his procedural due process rights were violated when he was re-detained without a pre-deprivation hearing after having been released on his own recognizance. Doc. 1 ¶¶ 45–51 (Petition). Because Petitioner construes the "deprivation" as the arrest and re-detention, not the final decision by an immigration judge denying bond or release, the Court disagrees with Petitioner's characterization of a pre-deprivation hearing. Thus, the Court finds that Petitioner's due process rights require a bond hearing pursuant to 8 U.S.C. § 1226(a).

Having reviewed the parties' pleadings, exhibits, and the relevant law, the Court finds that the Petition is well-taken, and therefore, is **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

Petitioner, a citizen of Ecuador, entered the United States in May 2024. *Id.* ¶ 27. Petitioner and his wife are seeking asylum. *Id.* ¶ 2. After a brief detention, Petitioner was released on his own recognizance and was served a Notice to Appear on June 3, 2024. *Id.* Petitioner has not missed an appointment throughout his removal process. *Id.* On January 10, 2026, Petitioner was arrested and detained in Minnesota by Immigration and Customs Enforcement as a part of "Operation Metro Surge." *Id.* ¶ 30. As of the filing of this Petition, Petitioner is detained at Torrance County Detention Facility in Estancia, New Mexico. *Id.* ¶ 5.

On September 5, 2025, the Board of Immigration Appeals ("BIA") issued a decision holding that immigration judges lacked authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (B.I.A. 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens . . . who are present in the United States without admission."). In light of *Hurtado*, Petitioner has remained in custody without an opportunity to post bond or request release because his detention has been classified as mandatory under 8 U.S.C. § 1225(b)(2)(A).

Petitioner filed this Petition on February 23, 2026. *See* Doc. 1. On February 24, 2026, the Court ordered Respondents to answer. Order to Answer, Doc. 3. On February 25, 2026, Petitioner was ordered removed to Guatemala under an Asylum Cooperative Agreement. Doc. 8 at 1 (Status Report). Petitioner timely filed an appeal of the removal order on March 23, 2026.[1] *Id.* On March

---

[1] Since Petitioner timely filed his appeal to the BIA, the statutory authority governing his detention has not shifted to 8 U.S.C. § 1231 which mandates detention. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022); *see also* § 1231(a)(2) (noting that the noncitizen "shall" be detained). Section 1231 begins once a removal order "becomes administratively final," meaning that the order has been affirmed by the BIA or the review period has expired. *See Riley v. Bondi*, 606 U.S. 259, 267 (2025). Petitioner has appealed his order of removal, and it has not yet been affirmed. Therefore, § 1231 does not yet govern Petitioner's detention.

17, 2026, Respondents filed their response. Doc. 6 (Response). Respondents incorporate arguments made in *Munoz Teran v. Bondi*, No. 2:25-cv-01218-KWR-SCY, 2026 WL 161527 (D.N.M. Jan. 21, 2026) and *Santos Ramirez v. Bondi*, No. 1:25-cv-01008-KWR-JMR, 2026 WL 84515 (D.N.M. Jan. 12, 2026).[2] *Id.* at 2.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A challenge to immigration detention is "properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## DISCUSSION

Petitioner asserts a single claim that his procedural due process rights were violated when Respondents re-detained him without notice and a hearing. Doc. 1 ¶¶ 45–51. Respondents contend that Petitioner is held under 8 U.S.C. § 1225(b) and subject to mandatory detention. Doc. 6 at 2. Alternatively, Respondents argue that there is no requirement that Petitioner receive a pre-deprivation hearing under 8 U.S.C. §§ 1225 or 1226 to comport with the demands of

---

[2] Both of these cases agree that the Court has jurisdiction to address the inquiry about what statute governs Petitioner's detention. The other incorporated jurisdictional argument concerns judicial review of an 8 U.S.C. § 1225(b)(1) determination, but here, Respondents argue that Petitioner is detained under § 1225(b)(2)(A). Thus, the Court will not address Respondents cursory jurisdictional arguments contained in other cases before this Court.

procedural due process. *Id.* at 1 n.2. The Court first addresses whether Petitioner's detention is governed by § 1225(b)(2)(A) or § 1226(a) before turning to Petitioner's due process argument.[3]

### I.    <u>Whether § 1225(b) or § 1226(a) governs Petitioner's detention.</u>

Respondents argue that Petitioner's detention is mandatory under § 1225(b)(2)(A). Doc. 6 at 1. Petitioner contends that his initial release was "under the discretionary authority of 8 U.S.C. § 1226(a)." Doc. 7 at 2. The Court agrees that Petitioner was initially released pursuant to § 1226(a) and that Respondents have not presently detained Petitioner under § 1225(b)(2)(A).

Section 1226(a) allows immigration officers, in their discretion, to detain noncitizens or release them on conditional parole. 8 U.S.C. § 1226(a). Release on one's own recognizance is a form of conditional parole under § 1226(a)(2)(B). *See Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023) ("[They were] released on their own recognizance pursuant to DHS' conditional parole authority under . . . 8 U.S.C. § 1226(a)(2)(B)."); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the . . . phrase 'release on recognizance' [is] another name for 'conditional parole' under § 1226(a).").

Here, Petitioner was released on his own recognizance, a form of conditional parole, pursuant to § 1226(a). Doc. 1 ¶ 2; s*ee also Matter of Cabrera-Fernandez*, 28 I. & N. Dec. at 747.

---

[3] Petitioner claims, in passing, that Petitioner's removal order is "independently unlawful." Doc. 7 at 7. In addition to jurisdictional issues arising from a district court's review of a final order of removal, Petitioner has not moved to amend his Petition to include any claim regarding the legality of his removal order. Thus, the Court will not consider his arguments made concerning his removal order and the legality of a "pre-termission" policy. *Id.*; *see also Parker v. Scott*, 394 F.3d 1302, 1319–20 (10th Cir. 2005) ("We do not review these claims because [Petitioner] failed to assert them in his district court petition for habeas relief."); *Cone v. Dowling*, 809 F. App'x 523, 526 n.3 (10th Cir. 2020) (declining to address a "claim [that] was not in [a petitioner's] original habeas petition"). Accordingly, any issue Petitioner intended to raise in his reply concerning the legality of a "pre-termission policy" is not properly before the Court. However, it appears Petitioner recognizes that any argument on this "pre-termission policy" is "beyond the scope of this Petition," but nevertheless wanted to notify the Court of the grounds for his appeal. *See* Doc. 7 at 7.

4

Release on recognizance is not categorized as "humanitarian" or "public benefit" parole under 8 U.S.C. § 1182(d)(5)(A). Therefore, Petitioner's initial release was authorized by § 1226(a) which indicates that Petitioner cannot now be detained under § 1225(b). *See Matter of M-S-*, 27 I. & N. Dec. 509, 516 (Att'y Gen. 2019) ("Yet [§ 1225] (under which detention is mandatory) and [§ 1226(a)] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens."); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025) (noting that the respondents did not "dispute that [§§ 1225 and 1226] . . . are mutually exclusive"). Furthermore, the Court finds that a plain reading of § 1225(b)(2)(A) demonstrates that Petitioner is not "seeking admission," and thus, his detention is governed by § 1226(a).

When interpreting a statute, courts first "examine the statute's plain text" and "[a]bsent ambiguity, [the] analysis ends there." *United States v. Koerber*, 10 F.4th 1083, 1112 (10th Cir. 2021). Should the analysis continue, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the 'broader context of the statute as a whole' when ascertaining the meaning of a particular provision." (citation omitted)). Courts also consider traditional canons of statutory interpretation. *Conrad*, 585 F.3d at 1381; *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011). Generally, the Court considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, only if the statutory language is ambiguous. *See, e.g.*, *United States v. Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008) ("[I]t is a longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute.").

Under the Immigrant and Nationality Act ("INA"), two statutes generally govern a noncitizen's detention pending a final order of removal: §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225, which mandates detention and does not afford a bond hearing, applies when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Section 1226 provides that a noncitizen "may be arrested and detained" pending a removal decision. § 1226(a). Under § 1226(a), the Attorney General may detain the arrested noncitizens, release them on bond, or release them on conditional parole. Section 1226(c) mandates detention for a noncitizen that is (1) present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain criminal acts. 8 U.S.C. § 1226(c)(1)(E).

In sum, immigration law authorizes the detention of "certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Jennings*, 583 U.S. at 289). For Petitioner's detention to be governed by § 1225(b)(2)(A), the Court must find that Petitioner (1) is an "applicant for admission," (2) who is "seeking admission," and (3) is "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A).

Petitioner is likely an "applicant for admission" as defined by statute. "[A]pplicant for admission" is defined as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "Admission" and "admitted" mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration

6

officer." *Id.* § 1101(a)(13)(A). Here, Petitioner is "present in the United States" as he has lived in the United States for over a year, and he has not been inspected or admitted. Doc. 1 ¶¶ 27–30; Doc. 7 at 2. Thus, per the statutory definition, Petitioner may be deemed an "applicant for admission" thereby satisfying the first criteria of § 1225(b)(2)(A).

The crux of the § 1225(b)(2)(A) inquiry is whether Petitioner can be deemed "seeking admission." As explained below, after a plain reading of the statute, the Court finds that Petitioner, who has been living in the United States for over a year, is not "seeking admission."

The Court begins with the plain text of the phrase "seeking admission." *See Koerber*, 10 F.4th at 1112. Since "seeking" is statutorily undefined, the Court will first consider the word "admission." "Admission" is statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A). "Entry" is statutorily undefined. Respondents do not assert that the word "entry" has any unusual, technical meaning, and therefore, the Court will apply its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017). "Entry" ordinarily means "[t]he action or an act of entering a place, area, building, etc." *Entry*, Oxford English Dictionary, https://www.oed.com/dictionary/entry_n?tab=meaning_and_use#5515547 (last visited Mar. 26, 2026); *see also Entry*, *Black's Law Dictionary* (12th ed. 2024) ("*Immigration*. Any entrance of an alien into the United States, whether voluntary or involuntary."). Thus, the word "admission," as used in § 1225(b)(2)(A), refers to a noncitizen's lawful act of physically entering the United States after inspection and authorization by an immigration officer.

Turning to the statutorily undefined word "seeking," in this context, it ordinarily means trying to obtain something or trying to bring about or effect. *Seek*, Oxford English Dictionary, https://www.oed.com/dictionary/seek_v#23724107 (last visited Mar. 26, 2026). In choosing the

present participle "seeking," courts should give effect to Congress's verb choice and find that "seeking" signals present and continuous action. *Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."); *see also Present Participle*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/present%20participle (last visited Mar. 26, 2026). Therefore, the Court finds that a plain reading of the phrase "seeking admission" demonstrates that § 1225(b)(2)(A) applies to noncitizens who are presently trying to lawfully and physically enter the United States.[4] Section 1225(b)(2)(A) does not apply to noncitizens who, like Petitioner, have lived in the United States for an extended duration and are not presently seeking lawful entry into the United States.

8 U.S.C. § 1225(a)(3) indicates that Petitioner is not "seeking admission." Section 1225(a)(3) provides that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* The word "or" is "almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" *United States v. Woods*, 571 U.S. 31, 45 (2013) (citation omitted). Additionally, the use of the phrase "or otherwise" signals that the term "applicants for admission" has a different meaning than the term "seeking admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058328 (last

---

[4] The Court understands the ordinary meaning of the word "entry," as used in the statute, to mean the physical act of going into the country. The meaning aligns with how "entry" is understood and used by the United States Supreme Court in the immigration context. The word "entry" has long referred to physically going into the country, regardless of whether the entrant is legally in the United States. *See, e.g.*, *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

visited Mar. 26, 2026) ("In another way or ways; in a different manner; by other means; in other words; differently.").[5] Thus, a plain reading of § 1225(a)(3) demonstrates that Petitioner may be deemed an "applicant for admission" without necessarily being deemed "seeking admission."

Further, Respondents interpretation renders recent amendments to 8 U.S.C. § 1226(c) superfluous. Section 1226(c)(1)(E) mandates detention for certain noncitizens who are implicated in certain crimes. It requires detention for a noncitizen who is (1) inadmissible as an alien present in the United States without being admitted or paroled, and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain crimes. Respondents' interpretation of § 1225(b)(2)(A) would require the detention of every noncitizen who is present in the country without being admitted or paroled. Such an interpretation would render the recent § 1226(c)(1)(E) amendment superfluous in that detention would be required regardless of the noncitizen's criminal involvement.

The Supreme Court, in dicta, has recognized that § 1225(b) generally applies "to aliens seeking entry into the United States" and that § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. The *Jennings* Court further noted that § 1226(a) creates a default rule for noncitizens present in the United States "by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also permitting "the Attorney General to release those aliens on bond." *Id.* at 303. Thus, the

---

[5] The grammatical placement of "or otherwise" also indicates that "seeking admission" must mean something different than "applicants for admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058910 (last visited Mar. 20, 2026) ("[F]ollowing a noun, adjective, adverb, or verb, to signify a corresponding word, thing, idea, etc., of opposite or alternative meaning" (citation modified)). Here, the phrase "or otherwise" follows a noun, "applicants for admission," signifying that the phrase "seeking admission" is a "corresponding word, thing, idea, etc., of opposite or alternative meaning." *Id.*; *see also* § 1225(a)(3).

Supreme Court's construction of §§ 1225(b) and 1226(a) align with this Court's reading of the phrases "applicant for admission" and "seeking admission."

The Court's statutory reading of § 1225(b)(2)(A) is consistent with the decisions of multiple courts, which have found that a person who has been present in the United States for an extended period of time is not "seeking admission" and therefore not subject to mandatory detention under § 1225(b)(2)(A). *See, e.g.*, *Castañon-Nava*, 161 F.4th at 1061; *see also Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (collecting cases in Appendix A); *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-CV-1031-KG, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) ("Noncitizens seeking admission are those who have not effected an entry into the United States." (citation modified)); *Buenrostro-Mendez v. Pamela Bondi*, 166 F.4th 494, 510 (5th Cir. 2026) (Douglas, J., dissenting).

Here, Petitioner entered the United States in May 2024 and was detained until June 3, 2024. Doc. 1 ¶ 27. Respondents released Petitioner on his own recognizance, and he remained in the United States for over a year before his re-detention *Id.* ¶¶ 28–29. Petitioner was re-detained in Minnesota. *Id.* Respondents do not suggest or point to any facts that Petitioner was seeking lawful, physical entry into the United States at the time of his arrest. Applying this statutory interpretation to the present facts, the Courts finds that Petitioner is not "seeking admission" under § 1225(b)(2)(A). Accordingly, Petitioner's detention is governed by § 1226(a).

II.    **Petitioner's procedural due process rights call for a bond hearing.**

Petitioner contends that his procedural due process rights were violated when he was not provided notice and a bond hearing prior to being re-detained.[6] Doc. 1 ¶ 49. Respondents

---

[6] Petitioner does not specify whether he refers to "notice" as notice of a bond hearing pursuant to § 1226(a) or notice about the revocation of his conditional parole under 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9) (2026). Petitioner blanketly refers to "notice" and does not refer to notice regarding

contend that Petitioner is mandatorily detained under § 1225(b) and not entitled to a bond hearing. Doc. 6 at 1. The Court finds that due process affords Petitioner a bond hearing under § 1226(a), and the hearing need not occur prior to his re-detention.

In considering a due process claim, the Court considers whether there exists a protected liberty interest and whether the procedures provided afford the individual adequate process. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2001); *see also Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) ("To claim a violation of his right to procedural due process, Petitioner 'must have a liberty or property interest in the outcome of the proceedings.'").

## A. Liberty interest.

Petitioner asks this Court to recognize a protected liberty interest in receiving a pre-deprivation hearing. Doc. 1 ¶ 49. Respondents argue that there is "no binding authority requiring such a pre-deprivation hearing under either § 1225 or § 1226." Doc. 6 at 1 n.2. While Respondents are correct that there is no explicit statutory authority requiring a pre-deprivation hearing, Petitioner argues that this pre-deprivation requirement arises from the Fifth Amendment's Due Process Clause. Doc. 1 ¶¶ 45–51.

---

the revocation of his conditional parole. It appears that Petitioner's reference to "notice" concerns notice of a bond hearing. In any event, the Court will not make Petitioner's arguments for him and declines to *sua sponte* determine whether Petitioner meant notice of the revocation of conditional parole or notice before a hearing before an immigration judge. Petitioner makes no argument and provides no documentation suggesting that his conditional parole was improperly terminated. Thus, the Court will not construe his reference to notice as such. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants).

11

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). A noncitizen that is considered to have not entered the country is only entitled to "the procedure authorized by Congress." *Sierra Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). However, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

### 1. Petitioner does not have a protected liberty interest in receiving a pre-detention hearing.

In finding that a noncitizen's conditional release rises to the level of a protected liberty interest, several courts have turned to a line of Supreme Court cases finding a protected liberty interest in parole, probation, and pre-parole. *See, e.g.*, *Singh v. Carnes*, No. 1:26-cv-00235-DHU-GJF, 2026 WL 599138, at *3 (D.N.M. Mar. 3, 2026); *J.A.E.M. v. Wofford*, __F. Supp. 3d__, No. 1:25-cv-01380-KES-HBK, 2025 WL 3013377, at *3 (E.D. Cal. Oct. 27, 2025). To determine whether a conditional release creates a protected liberty interest, at least one circuit has "resolved the issue 'by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (citation omitted).

In *Morrissey v. Brewer*, the Supreme Court found that paroled individuals enjoy several "of the core values of unqualified liberty" and build their lives upon "at least an implicit promise that parole will be revoked only if [they] fail[] to live up to the parole conditions." 408 U.S. 471, 482 (1972). Given the "grievous loss" caused by revocation of parole, the Court found that those

released on criminal parole were entitled to due process before having their parole revoked. *Id.* The Court expanded this principle to criminal probation, *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), and even a pre-parole program, *Young v. Harper*, 520 U.S. 143, 145 (1997).

A noncitizen's civil, conditional release and a citizen's criminal parole are parallel in several core constitutional respects. Like release on parole, or any release from detention, Petitioner's release "enables him to do a wide range of things" including work, "be with family and friends," and "form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Since his release on June 3, 2024, Petitioner has lived in the United States. Doc. 1 ¶ 27. Although Petitioner was required to attend "subsequent hearings for [his] removal proceedings," *id.*, a criminal parolee is also subjected "to many restrictions" not applicable to those not convicted of a crime, *Morrissey*, 408 U.S. at 482. Respondents make no argument as to why *Morrissey* and its progeny should not apply in the immigration context. The distinction between Petitioner's status as a noncitizen and the citizen in *Morrissey* is not necessarily dispositive. *See Zadvydas*, 533 U.S. at 693 (finding that the Due Process Clause applies to all people within the United States regardless of their status).

However, *Morrissey* does not necessarily stand for the proposition that a noncitizen, previously released pursuant to § 1226(a), is entitled to a hearing prior to being detained again. Although *Morrissey* found that a criminal parolee was entitled to due process during the revocation of parole, the process due was only "that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." 408 U.S. at 484–85. The Court found that "after the arrest," due process required that an individual, not directly involved in the case, determine that reasonable ground existed for revoking parole. *Id.* The determination by this individual is

meant to inquire whether there "is probable cause or reasonable ground to believe that the arrested parolee" violated their conditions of parole and whether it is justified to "hold the parolee for the final decision of the parole board on revocation." *Id.* at 487. This language indicates that the arrest, or Petitioner's re-detention, may occur prior to any hearing. The phrases "at or reasonable near" and "as promptly convenient after arrest," do not suggest that a hearing must be conducted before Petitioner is detained again.

Here, what Petitioner calls a "pre-deprivation hearing" is specifically referring to "written notice and a hearing . . . prior to any re-detention" after having been released on an order of recognizance. Doc. 1 ¶ 49. Even if this Court assumes that *Morrissey* applies in the civil immigration context, Petitioner seeks greater procedural protection than *Morrissey* demands. *Morrissey* characterizes the deprivation as "the final decision" revoking parole, not the arrest and detention prior to any final decision revoking release as Petitioner's analysis suggests. 408 U.S. at 487–88. The pre-deprivation hearing *Morrissey* requires "must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." 408 U.S. at 488. Similarly, the bond hearing required under § 1226(a) requires an immigration judge to make an evaluation of the relevant facts as to whether a petitioner is a flight risk or a danger to the community. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) (2026). These hearings precede the final deprivation by the parole or immigration official.

Petitioner also argues that a bond hearing "is not an adequate substitute" because it "only occurs after liberty has already been taken." Doc. 1 ¶ 50. The crux of this issue is when a bond hearing pursuant to § 1226(a) must occur by. Federal regulations provide that noncitizens detained pursuant to § 1226(a) are entitled to "bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) (2026)). But "§ 1226(a)'s text [does not] even

14

hint that the length of detention must specifically be considered in determining whether the alien should be released." *Id.*

The Supreme Court used the word "outset" to describe when the bond hearing should occur. *Id.* "Outset," in this context, means "[t]he action or fact of setting out upon a journey, course of action, business, etc.; a start, a beginning." *Outset*, Oxford English Dictionary, https://www.oed.com/dictionary/outset_n1?tab=meaning_and_use#32797824 (last visited Mar. 26, 2026). As cited in *Jennings*, the accompanying regulations provide for "an initial custody determination by the district director" and that "[p]rior to [a] final order . . . the immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) (2026). The regulations do not impose a strict deadline in which the bond hearing must be held. Courts have found that a bond hearing, after various lengths of detention, sufficiently provides the petitioner with the process due. *See, e.g.*, *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1246 (D.N.M. Sep. 17, 2025) (ordering a bond hearing after nearly three months of detention without a hearing); *Kostak v. Trump*, No. 3:25-1093, 2025 WL 2472136, at *4 (W.D. La. Aug. 27, 2025) (denying release and ordering a bond hearing after two months of detention); *Gutierrez v. Garcia*, No. 2:25-cv-001145-WJ-KRS, 2026 WL 310064, at *5–7 (D.N.M. Feb. 5, 2026) (denying release and ordering a bond hearing after nearly six months of detention). This reading of the bond hearing deadline aligns with *Morrissey*'s requirement that the "revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." 408 U.S. at 488. The *Morrissey* Court found that a "lapse of two months . . . would not appear to be unreasonable." *Id.*

Even assuming *Morrissey* applies to Petitioner's case, *Morrissey* requires notice and a hearing before the final revocation of Petitioner's conditional parole, not before his detention.

15

Accordingly, based on the argument before the Court, Petitioner has not met his burden of demonstrating that he has a constitutionally protected liberty interest in receiving written notice and a bond hearing prior to his re-detention. *See Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [petitioner] was *not* 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citing § 2241(c)(3)).

### 2. Petitioner's protected liberty interest.

Although the Court will not adopt Petitioner's interpretation of the Due Process Clause and *Morrissey* to recognize the liberty interest that Petitioner seeks, the Court finds that Petitioner still maintains an interest in receiving the process authorized by Congress. *Sierra*, 258 F.3d at 1218. Petitioner also has a liberty interest in freedom from detainment. *See Hamdi*, 542 U.S. at 529.

Under the Fifth Amendment, noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Therefore, immigration detainees "are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

Petitioner claims that he was initially detained "at the U.S. southern border" before being released on his own recognizance. Doc. 1 ¶ 27. Since Petitioner was initially released on a form of conditional parole pursuant to § 1226(a), the Court finds that Petitioner is entitled to a bond hearing under the statute. *See United States v. Gonzalez-Fierro*, 949 F.3d 512, 520 (10th Cir. 2020) ("[T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011))). Having found that

Petitioner has protected interests in receiving the procedure authorized by Congress and his freedom from detention, the Court considers what amount of process is due.

### B.  Due process requires that Petitioner receive a bond hearing.

Since the Court finds that Petitioner has a protected liberty interest, the Court must examine the adequacy of the procedure to ensure that the deprivation meets the demands of the Constitution. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). In determining what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

#### 1.  Private interest.

The first *Mathews* factor considers the private interest at stake. Petitioner's basic interest in being free from detention is at stake. *See Hamdi*, 542 U.S. at 529 (finding that freedom from detention is "the most elemental of liberty interests"). Petitioner's interest in receiving the procedural protections authorized by Congress is also at stake. *See Sierra*, 258 F.3d at 1218. These interests possess significant weight. Even balanced against the "broad power over naturalization and immigration" possessed by Congress that justifies "rules that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 521 (2003), Petitioner possesses two interests that tip the scale in his favor. Thus, the Court finds that the first *Mathews* factor favors Petitioner.

#### 2.  Risk of erroneous deprivation and the value of additional safeguards.

The second *Mathews* factor considers the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards. Since Respondents argue that

Petitioner is detained pursuant to § 1225(b), Petitioner has not received the bond hearing he is owed under § 1226(a). The risk of erroneously revoking Petitioner's conditional parole remains high as, under Respondents' interpretation, he will not receive a bond hearing to determine whether he presents a flight risk or danger to the community. Without the opportunity to have the hearing to which Petitioner is entitled, the risk of erroneous deprivation will remain high. A bond hearing before a neutral immigration judge will provide immense value as an additional safeguard. Therefore, the second *Mathews* factor favors Petitioner.

### 3. Government's interest.

The final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. When considering the Government's interest, the Supreme Court has instructed that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The Government has an interest in enforcing its immigration policies and preventing noncitizens from remaining "in the United States in violation of our law." *Demore*, 538 U.S. at 518. The Court recognizes that "[o]ver no conceivable subject is the legislative power of Congress more complete." *Reno*, 507 U.S. at 305 (citation modified). Thus, the Government's interest in enforcing its immigration policies is considerable.

Although the Government's interest in enforcing its immigration policies must be afforded considerable weight, the Government's interest in detaining Petitioner without providing the procedure he is due does not weigh nearly as heavily as its interest in lawful immigration enforcement. The fiscal and administrative burdens of providing a bond hearing under § 1226(a)

are minimal and do not provide adequate justification for foregoing the hearing entirely. Thus, the third *Mathews* factor weighs in favor of Petitioner.

Accordingly, the Court finds that the *Mathews* factors weigh in favor of Petitioner, and Petitioner is entitled to a bond hearing under § 1226(a).

### III.    The Court finds that a bond hearing is an adequate remedy.

Petitioner requests immediate release or a bond hearing in which Respondents bear the burden of demonstrating that Petitioner is not a danger or flight risk. Doc. 1 at 17–18. Petitioner contends that a bond hearing alone is not an adequate remedy because his liberty has already been taken. *Id.* ¶ 50. Beyond this, Petitioner cites no law and applies no standard in his Petition demonstrating that a bond hearing would be inadequate. Because Petitioner does not demonstrate that § 1226(a) will provide inadequate process, the Court will not order that he be immediately released or that Respondents bear the burden at his bond hearing.

Section 1226(a) gives Respondents discretion to detain, release on bond, or parole a noncitizen. Generally, the release or bond decision is discretionary. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.").

Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). A federal court is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus*." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). In issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243. Assuming that the Court has the authority to order Petitioner's

19

immediate release, the Court, in its discretion, orders Respondents to provide Petitioner an individualized bond hearing so that he may receive the process he is due under the statute. *See* § 1226(a) (providing that the Attorney General may continue to detain a noncitizen or release him on bond or parole pending a decision of removal). Petitioner does not demonstrate that due process requires immediate release as opposed to a bond hearing.

Petitioner bears the burden of proof to demonstrate that he is entitled to relief or a remedy, including whether the burden should be placed on the Respondents to justify his detention at a bond hearing. *See* 28 U.S.C. § 2241; *Skaftouros*, 667 F.3d at 158 ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [petitioner] was *not* 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citing § 2241(c)(3)); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (finding, in a § 2241 proceeding, that the "burden of proof was upon the petitioner to sustain [the] allegations"). Petitioner also bears the burden to demonstrate a "deprivation of rights leading to unlawful detention" under § 2241. *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009); *see also Smith v. Workman*, 550 F.3d 1258, 1273 (10th Cir. 2008) (noting that, in the context of a *Brady* violation, the petitioner "bears the burden of showing that the prosecution suppressed material evidence favorable" to the petitioner). Here, Petitioner has not demonstrated that due process requires his release or shifting the burden at his bond hearing. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Due process . . . is a flexible concept that varies with the particular situation.").

### A. Petitioner is not entitled to a shifted burden at his bond hearing.

Having already determined that due process does not require Petitioner's immediate release, the Court will consider whether Petitioner meets his burden demonstrating that Respondents should bear the burden at his bond hearing. Petitioner does not adequately present

20

this argument in his Petition since he does not cite any standard or law that suggests the burden should shift. *See Phillips*, 244 F.3d at 800 n. 10 (observing that a court has no obligation to make arguments or perform research on behalf of litigants). Petitioner presents the argument in his reply more fully, but even if the argument were properly presented in his Petition, the argument fails.

Petitioner argues in his reply that, as a matter of due process, the burden should be shifted to Respondents at Petitioner's bond hearing. Doc. 7 at 4–6. However, Petitioner cites no binding case law demonstrating that the burden should shift to Respondents after Petitioner's re-detention. Rather, Petitioner points to a string of cases that have reasoned that due process warrants shifting the burden "because the alien's potential loss is so severe . . . he should not have to share the risk of error equally." Doc. 7 at 4 (quoting *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 688 (W.D. Tex. 2025)). He also argues that burden shifting may prevent erroneous deprivations of liberty. *See* Doc. 7 at 5 (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 30–31 (1st Cir. 2021)). Beyond alluding to balancing risks, Petitioner does not cite to any standard or law that the Court should apply in determining whether the burden should shift at his § 1226(a) hearing.

When interpreting a statute, courts first "examine the statute's plain text" and "[a]bsent ambiguity, [the] analysis ends there." *Koerber*, 10 F.4th at 1112. Should the analysis continue, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341; *see also Conrad*, 585 F.3d at 1381 ("We also take into account the 'broader context of the statute as a whole' when ascertaining the meaning of a particular provision." (citation omitted)). Generally, the Court considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, only if the statutory language is ambiguous. *See, e.g.*, *Husted*, 545 F.3d at 1247 ("[I]t is a

longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute.").

Beginning with the text of the statute, § 1226(a) does not specify which party bears the burden of proof at a custody redetermination hearing. Section 1226(c), titled "Detention of criminal aliens," explicitly states that a noncitizen who commits certain criminal acts may only be released if she meets certain criteria and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(4). However, the record does not indicate that Petitioner has a criminal record that would place him within the scope of § 1226(c).

Although the plain language of the statute fails to clarify who bears the burden, relevant regulations provide the following:

> Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.

8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) (2026). The phrase "provided that the alien must demonstrate to the satisfaction of the officer" indicates that the noncitizen bears the burden. This interpretation aligns with BIA precedent that found that the burden is on the noncitizen. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) ("The burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond."); *see also In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (B.I.A. 1999) ("Pursuant to 8 C.F.R. § 236.1(c)(8), the [noncitizen] must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings."). Although these regulations and decisions demonstrate that the

noncitizen bears the burden of proof to initially be released, they do not suggest that the burden switches to Respondents because Petitioner had previously been released.[7]

The Supreme Court has touched on burden allocation under § 1226(a), but the Court has merely noted that the text does not indicate when each party should bear the burden. *See Jennings*, 583 U.S. at 306 (noting that "[n]othing in § 1226's text . . . supports the imposition" of "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary").

The Tenth Circuit has not addressed this issue. Circuits that have addressed tangential issues regarding the constitutionality of § 1226(a) are split. The First and Second Circuits have held that detainees are entitled to an additional bond hearing where the government bears the burden after the detainment becomes prolonged. *Hernandez-Lara*, 10 F.4th at 40; *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020). On the other hand, the Third, Fourth, and Ninth Circuits have found that § 1226(a) does not entitle a detainee to a new bond hearing with a shifted burden after detention becomes prolonged. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018); *Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213–14 (9th Cir. 2022). As an initial matter, these circuits addressed a related but materially different question than Petitioner presents. These circuits dealt with a burden-shifting requirement after the detainee had been detained under § 1226 for a prolonged

---

[7] The Court recognizes that some courts have recently turned to the BIA decision of *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981) for the argument that no change should be made to a previous bond decision "absent a change in circumstances." *See, e.g.*, *Sing v. Hale*, No. 2:26-cv-53, 2026 WL 765623, at *3 (D. Vt. Mar. 18, 2026); *Hernandez-Parrilla v. De Anda-Ybarra*, No. 2:25-cv-01224-MIS-KK, 2025 WL 3632769, at *5 (D.N.M. Dec. 15, 2025). However, Petitioner was not released due to a finding by an immigration judge. And Petitioner was released on a form of conditional parole, no bond determination is at issue here. Therefore, the Court finds *Matter of Sugay* to be inapposite.

period of time. Here, Petitioner asks the Court to shift the burden after he had spent several months living in the United States free from detention. Finding that a burden-shifting requirement is warranted upon re-detention would significantly expand even the First and Second Circuits' findings.

### B. *Mathews* does not warrant shifting the burden at Petitioner's bond hearing.

In determining burden-shifting procedure for prolonged detention under § 1226, several circuits have turned to the *Mathews* factors. *See Rodriguez Diaz*, 53 F.4th at 1206; *Miranda*, 34 F.4th 358–59; *Hernandez-Lara*, 10 F.4th at 27–28; *Velasco Lopez*, 978 F.3d at 851. Assuming *Mathews* applies in this context, the *Mathews* factors do not warrant shifting the burden at Petitioner's bond hearing.

As previously discussed, under the first *Mathews* factor, Petitioner has the basic interests in his freedom from detention and receiving the procedure authorized by Congress. *See Hamdi*, 542 U.S. at 529; *see also Sierra*, 258 F.3d at 1218. Even weighed against the sovereign prerogative over immigration matters that allows Congress to make rules for noncitizens that may not be applied to citizens, the first *Mathews* factor favors Petitioner.

However, the second *Mathews* factor, in the context of shifting the burden at a subsequent bond hearing, does not favor Petitioner.[8] Since noncitizens, like Petitioner, "do not have a constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights for an "opportunity to be heard at a meaningful time and in a meaningful manner." *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009), *cert. denied*, 559 U.S. 1067 (2010). Petitioner receives all the process he is due so long as he receives a

---

[8] Because the Court has already found that Petitioner is entitled to receive notice and a bond hearing under § 1226(a), this analysis assumes Petitioner receives notice and his bond hearing.

bond hearing pursuant to § 1226(a). Petitioner will be given notice of and receive a bond hearing before an immigration judge, and he will have the opportunity to present evidence that he should be released. This opportunity to be heard is meaningful in time and manner because it precedes any decision to deny or grant release. This process parallels the process in *Morrissey* which provides for a pre-deprivation hearing, after detention has already occurred, to determine a final revocation decision. *See* 408 U.S. at 487–88 (noting that detention for two months before a hearing "would not be unreasonable"). Furthermore, Petitioner will have the opportunity to appeal an adverse determination. *See* 8 C.F.R. §§ 1003.36, 1236.1(d) (2026).

The value of the additional safeguard Petitioner suggests, flipping the burden, does little to lessen the risk of an erroneous deprivation in a proper fashion. The deprivation, the final decision to revoke parole, occurs after a hearing before an immigration judge. An immigration judge has the experience and tools necessary to make a well-reasoned decision about whether a noncitizen may remain on bond or release. Provided that Petitioner receives notice of this hearing, he receives the process he is due. Flipping the burden necessarily lessens the risk of any deprivation, proper or erroneous, but it does so at the cost of exceeding the judicial role. *See Landon*, 459 U.S. at 34–35 ("The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy."). Petitioner has not presented any binding precedential or statutory justification for flipping the burden in this situation. Without such support, the Court would lean on due process to displace a congressional policy choice. *See Perttu v. Richards*, 605 U.S. 460, 470 (2025) ("[T]he statutory silence on the question before us 'is strong evidence that the usual practice should be followed.'" (quoting *Jones v. Bock*, 549 U.S. 199, 212 (2007))). Since Petitioner receives the process he is due under the statute and the risk of

25

an *erroneous* deprivation remains low so long as a hearing occurs, the second *Mathews* factor favors Respondents.

The final *Mathews* factor considers the Government's significant interest in immigration proceedings as well as the fiscal and administrative burden that a burden-shifting requirement would entail. The Court will not overlook that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon*, 459 U.S. at 34. Detention has been deemed a valid part of sovereign prerogative "necessary to give effect to the provisions for the exclusion or expulsion of aliens." *Wong Wing v. United States*, 163 U.S. 228, 235 (1896). The Supreme Court found that removal proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation." *Id.* Although the fiscal and administrative burdens of a burden-shifting requirement would likely be minimal, the legislature and executive's silence on a burden-shifting requirement indicates that any judicially imposed burden-shifting requirement here would be displacing a congressional policy choice that the burden remain with Petitioner. *See E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 52 (2025) ("Statutory silence is generally 'inconsistent with the view that Congress intended to require a special, heightened standard of proof.'" (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991))). Thus, the significant weight afforded to the executive and legislature over immigration matters renders the third *Mathews* factor favorable to Respondents.

Under the *Mathews* factors, the Court finds that due process does not require that Respondents bear the burden at Petitioner's bond hearing—even though he was previously released on his own recognizance. Accordingly, the Court finds that a bond hearing under § 1226(a) provides Petitioner the process he is due.

**CONCLUSION**

The Court concludes that Petitioner's detention is governed by § 1226(a), not § 1225(b)(2)(A), and that due process entitles Petitioner to notice and a bond hearing under § 1226(a). Accordingly, the Petition (Doc. 1) is granted in part. However, the Court finds that Petitioner failed to demonstrate that due process entitles him to notice and a hearing prior to being re-detained. Therefore, the Petition is denied in part. Respondents are directed to arrange an individualized bond hearing pursuant to § 1226(a) for Petitioner before an immigration judge within **seven (7) days** of the entry of this order. Respondents shall not deny Petitioner bond or parole on the basis that § 1225(b) requires mandatory detention. The parties are ordered to file a status report within **ten (10) days** of the entry of this order. The Court will enter a separate judgment.[9]

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is hereby **GRANTED in part and DENIED in part** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Respondents shall provide Petitioner an individualized bond hearing before an immigration judge pursuant to § 1226(a), as opposed to § 1225(b), within **seven (7) days** of the entry of this order, provided that the Court makes no determination whether or when in the future § 1231 provisions may apply.

**IT IS FINALLY ORDERED** that the parties are directed to file a joint status report within **ten (10) days** of the entry of this order.

---

[9] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton*, 975 F.2d at 693 (explaining that district court has authority to enforce its habeas judgment).

27

_/S/_____

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE